UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THEOPHILUS OKEKE, M.D.,

                                                                   02-CIV-5935
                                                                   (TCP)(ETB)

                           Plaintiff,

                                                                  **MEMORANDUM**
                                                                        **AND**
                                                                     **ORDER**

                        - against -

SOUTHSIDE HOSPITAL,

                           Defendant.
------------------------------------------------------------X
PLATT, District Judge.

       Defendant Southside Hospital ("Defendant" or "Hospital") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 against Plaintiff Theophilus Okeke ("Plaintiff" or "Dr. Okeke"), claiming there are no genuine issues of disputed fact as to Plaintiff's claims of: (i) discrimination based on race; (ii) discrimination based on age; (iii) failure to promote; (iv) hostile work environment; and (v) breach of contract.

       **For the following reasons, the motion for summary judgment is DENIED in part and GRANTED in part.**

## BACKGROUND

1

Plaintiff initially worked as a part-time emergency room physician for Defendant. From 1999, until he was terminated on May 1, 2001, Dr. Okeke was employed as a full-time emergency room physician at Southside Hospital.[1] Plaintiff is a fifty (50) year-old African-American male.

Plaintiff signed an employment contract when he became a full-time employee at the Hospital. Included in this contract, is a clause barring the Plaintiff from engaging "in any other business or professional activities" without the prior consent of the Hospital.

Despite this express prohibition from doing so, tax records and interrogatory answers confirm that the Plaintiff worked over 1500 hours in the year 2000 at other hospitals despite his full-time employment at the Hospital. The tax records submitted in this case show that Dr. Okeke earned $106,675 in the year 2000 while working at the Island Medical Center, $32,110 at the Wyckoff Hospital in 2000, and $75,487 at Huntington Hospital–all on top of his full-time salary at the Hospital of $218,162.84. In his deposition, the Plaintiff admits that he never asked the Hospital's permission but alleges that many other doctors at the Hospital also moonlighted at other institutions.

---

[1] Plaintiff initially sued both Southside Hospital and North Shore Long Island Jewish Health System ("NS-LIJ"); however, this Court granted NS-LIJ's motion to dismiss with prejudice. Thus, the Hospital is the only remaining Defendant.

About a year into the Plaintiff's tenure at the Hospital, Dr. Robert Korn became the Medical Director of the Emergency Department ("ED"). During his tenure, Dr. Korn claims to have documented various performance deficiencies by Plaintiff. Dr. Korn claims to have received complaints from nurses that Dr. Okeke would avoid work and procrastinate in discharging patients. Other physicians allegedly complained to Dr. Korn that Dr. Okeke was often late, causing them to work longer shifts. In fact, time records for the two weeks leading up to a verbal reprimand from Dr. Korn show that Dr. Okeke was late everyday.[2] Dr. Okeke was also found numerous times to be allegedly sleeping on the job. Dr. Okeke disputes this claim and says that he was observed sleeping only after his shift was over–something he needed to do because he lived so far away and wanted to ensure that he did not fall asleep on the road on the way home. Dr. Okeke received a verbal warning about his chronic lateness from Dr. Korn, which is documented in a memo to the file dated January 8, 2001. (Korn Aff., Exh. A)

According to the Defendant, the situation became so bad that Dr. Korn issued a written reprimand to Dr. Okeke, dated January 18, 2001, accusing him of

---

[2] The time records submitted by the Defendant show that the Plaintiff was late by: 17 minutes on December 26th, 20 minutes on December 27th, 47 minutes on December 30th, 67 minutes on December 31st, 15 minutes on January 1st, 21 minutes on January 2nd, and 55 minutes on January 3rd.

being "asleep while on duty." (Korn Aff., Exh. C). The letter also reprimanded Dr. Okeke for various other unsatisfactory work habits:

> I have received numerous complaints from other ED physicians about your work habits. Specifically it has been reported that you leave the department for prolonged periods to take meals, even when there are patients to be seen or a critical patient is known to be arriving shortly. You also have been reported to 'stack' your side with non-critical patients who most staff feel do not need to be monitored, which effectively limits the number of new patients which are assigned to you.

(Korn Aff., Exh. C). Although this letter invited Dr. Okeke to set up a meeting to discuss this matter with Dr. Korn, Dr. Okeke never did so.

In addition, a Hospital Board of Trustees member, who was a patient of the Hospital, complained about the poor performance of Dr. Okeke. The Board member's complaints are documented in a series of e-mails between Dr. Korn and Matthew Zagami, a Vice President at the Hospital.

On May 7, 2001, Dr. Korn informed Dr. Okeke that he was terminated from the Hospital. Dr. Korn states in a "note to file" dated that same day that when he informed Dr. Okeke of his termination, Dr. Okeke stated that he had already been offered a directorship at another ED. (Korn Aff., Exh. F). Dr. Korn states that he offered Dr. Okeke the opportunity to stay at the Hospital for ninety (90) days pursuant to the terms of the employment agreement, but that Dr. Okeke refused. Dr. Okeke claims he was never offered the option of staying for 90 days

and that this constitutes a breach of the employment agreement.

Three (3) days after learning that he was terminated, Dr. Okeke resigned by e-mail to Dr. Korn, stating that "[t]his is to inform you that I plan to stop working a Southside Hospital ED as of the end of May. I'm sorry for this short notice...[m]y new job already has me on the schedule for the month of June." (Korn Aff., Exh. G)

According to the Defendant, the Hospital only learned of Dr. Okeke's extensive moonlighting at other hospitals for the first time during discovery in this litigation. It is the Defendant's belief that the 1500 hours Dr. Okeke spent working at other hospitals explains his tardiness, sleeping on the job and poor performance at the Hospital. Dr. Okeke admitted in his deposition that his new job paid him more money than his position at the Hospital. (Tr. 142; 168-69)

Plaintiff claims that he was terminated from his position because of his age and because of his race. To support these contentions, the Plaintiff claims that

- the Hospital singled him out by assigning him the least desirable work shifts, such as nights, weekends, and holidays.

- refused to provide him Spanish interpreters for Spanish-speaking patients

- cancelled tests that Dr. Okeke ordered for patients

- placed him "on call" during medical staff meetings

- denied the him two promotions of Associate and Assistant Director which the Plaintiff alleges were given to younger, less qualified white applicants instead.

- falsely accused the Plaintiff of sleeping on the job and coming in to work late

- breached his employment agreement by terminating him without providing him the required ninety (90) day written notice

In November of 2002, Plaintiff brought suit in this Court alleging that Defendant had violated 42 U.S.C. § 1981, the New York Executive Law, the New York Human Rights Law § 290, and breached his employment contract.

## DISCUSSION

I.  **Standard for Summary Judgment**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the specific pleadings, and 'designating specific facts showing there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If there is any evidence in the record from which a reasonable inference could be drawn in favor

of the non-moving party on a material issue of fact, summary judgment is improper. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

The Defendant moves for summary judgment on five (5) grounds: (i) discrimination based on race; (ii) discrimination based on age; (iii) failure to promote; (iv) hostile work environment; and (v) breach of contract.

A.     Discrimination based on race and age

The legal standards for determining claims of race discrimination under § 1981 and claims of race or age discrimination under the HRL are the same. Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994). To state a claim for discrimination based on age or race, Dr. Okeke must first demonstrate that (1) he is a member of a protected class (race/age); (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Hunter v. St. Francis Hosp., 281 F. Supp. 2d 534, 541 (E.D.N.Y. 2003 (J. Platt) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). If the Hospital can then make a showing of a legitimate, nondiscriminatory reason for the termination, then in order to defeat summary judgment, Plaintiff's admissible evidence must show "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on

discrimination. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)).

The parties only dispute the second and forth prongs of the above test–that Dr. Okeke satisfactorily performed his job and that he was fired because of discriminatory reasons. Because there remain questions of fact as to whether Plaintiff satisfactorily performed his job, summary judgment is denied. The affidavits and exhibits submitted by the Defendant show that Dr. Okeke had received reprimands by Dr. Korn about his poor work performance. (Korn Dep. at 66-70) In particular, Dr. Okeke is alleged to have been a slow worker and that he took longer than other physicians to discharge patients. Dr. Okeke protests that he did not have poor work performance and that Dr. Korn was mistaken in this impression. He provides affidavits from various other Southside ER employees who testify that they do not remember any problems arising from Dr. Okeke's work performance. (Ayyub Aff. ¶ 4, Dwyer Aff. ¶ 5, Izzo Aff. ¶ 7, Freiler Dep. at 32:-33) Since this is a question of fact, summary judgment is denied.

Because there are questions of fact as to Dr. Okeke's work performance, the Court need not reach the issue of whether Dr. Okeke has established an inference of discrimination–either based on age or race. However, in the interest of being comprehensive, the Court only notes its doubt as to whether Dr. Okeke may establish that he was terminated for discriminatory reasons. Plaintiff alleges

that before Dr. Korn fired him, Dr. Korn told him "that he did not belong here" and did not "fit in." Dr. Okeke testified at his deposition that he took this to mean that he did not fit in because he was old and black. Such speculation, however, does not give rise to an inference of discrimination. Yadav v. Brookhaven Nat'l Lab., 204 F. Supp.2d 509, 520 (E.D.N.Y. 2002).

Moreover, Dr. Okeke's allegations appear to be contrary to the actual statistics at the Hospital. The Hospital has numerous other Emergency Department physicians who are minorities and are over the age of 40. (Korn Aff. at ¶¶ 25-27) Harmon v. Runyon, No. 96 Civ. 6080, 1997 WL 786383, *5 (S.D.N.Y. Dec. 19, 1997). In fact, the other full-time physicians terminated by Dr. Korn were white. And, the first physicians hired after Dr. Okeke's termination were black and born in 1956. Nevertheless, despite the Court's doubt as to whether Dr. Okeke can show an inference of discrimination, the remaining questions of fact as to the quality of his work performance persuade the Court to deny the motion for summary judgment as to this claim.

Even if Dr. Okeke were able to assert a prima facie case of discrimination here, the burden of persuasion shifts to the employer to articulate some legitimate non-discriminatory reason justifying the alleged improper employment action. Texas Dep't of Comty Affairs. Burdine, 450 U.S. 248, 254 (1981). An employer "need not prove that it made the wisest choice, but only that the reasons for its

decisions were non-discriminatory." De La Concha v. Fordham Univ., 5 F. Supp.2d 188, 194 (S.D.N.Y. 1998), aff'd, 173 F.3d 843 (2d Cir. 1999) (citation omitted). Because there are issues of fact as to whether Dr. Okeke had performance problems at Southside, the Court may not determine whether the Defendant had a legitimate non-discriminatory reason for its termination of Dr. Okeke.

Accordingly, the motion for summary judgment is denied on the discrimination claim.

B. Failure to promote

The motion for summary judgment is granted on the failure to promote claims because Dr. Okeke fails to show that he applied for a position for which he was qualified. To establish a *prime facie* case on a failure to promote claim, the plaintiff must show: (1) he falls within a protected group, (2) he applied for a position for which he was qualified, (3) he was subject to an adverse employment decision, and (4) that the adverse employment decision was made under circumstances giving rise to an inference of racial discrimination. Evans v. Port Authority, 192 F. Supp. 2d 247, 265 (S.D.N.Y. 2002) (citation omitted).

First, Dr. Okeke never applied for the positions of Associate and Assistant Director. Dr. Okeke admits he never formally applied for the position, but claims that before the positions became available he expressed his general interest to Dr.

Freiler, Dr. Korn's predecessor, in being promoted. Dr. Okeke also claims that he informed Dr. Charlene Fullum that he was interested in the Associate Director position. However, Dr. Okeke must be able to allege that he had "applied for a specific position and was rejected therefrom, rather than merely asserting that on several occasions [] he generally requested promotion." Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998); Kinsella v. Rumsfeld, 320 F.3d 309 (2d Cir. 2003) (holding plaintiff failed to establish prima facie case where he alleged only that he repeatedly requested a promotion).

Moreover, from the evidence put forth thus far, it is not clear whether Dr. Okeke was even qualified for those positions. As demonstrated by his record of alleged chronic lateness and sleeping on the job, Dr. Okeke may not have had a stellar performance record at the Hospital. It also should be noted that the people subsequently hired for the positions were not younger than Dr. Okeke, nor is there evidence that the hiring decisions were based on a racially discriminatory basis. Dr. Weber, who was hired for the Associate Director position, is only two (2) years younger than Dr. Okeke. Moreover, she was exceedingly qualified for the position, having previous administrative experience, whereas Dr. Okeke had a demonstrated record of poor work performance. Even if the Court were to find that Dr. Okeke was better qualified for the job, the hiring decision should still stand. An employer has discretion "even to make a bad business decision by

hiring a less qualified candidate, so long as that decision is not motivated by discrimination." Scaria v. Rubin, No. 94 Civ. 3333, 1996 WL 389250, *8 (S.D.N.Y. July 11, 1996), aff'd, 117 F.3d 652 (2d Cir. 1997).

Accordingly, summary judgment is granted on this failure to promote claim.

### C. Hostile work environment

The Defendant's summary judgment motion as to the hostile work environment claim is granted. To prevail on a hostile work environment claim, Dr. Okeke must prove that (1) the workplace is "permeated with discriminatory intimidation, ridicule and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'" Hunter, 281 F. Supp.2d at 548 (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). This test has both objective and subjective components: the misconduct shown must be "'severe or pervasive enough to create an objectively hostile environment' and the victim must also subjectively perceive that environment to be abusive." Id. Dr. Okeke must be able to "demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc.,

202 F.3d 560, 570 (2d Cir. 2000) (citation and internal quotation marks omitted).

Here, the alleged misconduct in this action is not "severe or pervasive" enough to warrant this Court's finding of a hostile work environment. Dr. Okeke alleges the following events as having created a hostile work environment: (i) Dr. Korn spoke condescendingly to Plaintiff and other black staff members, (ii) Dr. Korn overscrutinized Plaintiff but did not overscrutinize Plaintiff's white counterparts, (iii) Dr. Korn created schedules taking white ER doctors' scheduling preferences into account, but refused to provide the same courtesy to Plaintiff and other minority doctors, (iv) Dr. Korn singled out Plaintiff as someone who ordered too many tests and cancelled those tests, (v) Dr. Korn undermined Plaintiff's work in front of ER staff. Besides his own affidavit, the Plaintiff offers no other proof of these incidents. Even if he were able to offer proof, it does not appear that any of these actions rise to the level of a hostile work environment based on race or age.

Therefore, summary judgment is granted on the hostile work environment claim.

### D. Breach of contract

The elements for a common law claim for breach of contract are (1) formation of a contract between the Plaintiff and the Defendant, (2) performance by the Plaintiff, (3) Defendant's failure to perform, and (4) resulting damage.

Rexnord Holdings, Inc. v. Biderman, 21 F.3d 522 (2d Cir. 1994). When an employee is not given the notice required by his employment contract, damages are limited to the wages he would have received had he been given the notice specified in his contract. Holt v. Seversky Electronatom Corp., 452 F.2d 31, 34-35 (2d Cir. 1971). There appears to be a question of fact as to this claim–whether it was the Hospital or Dr. Okeke who failed to provide the ninety (90) day grace period supplied in the employment contract. The Hospital claims that they offered–but Dr. Okeke rejected–their offer to stay on for ninety (90) days following his notice of termination. Dr. Okeke claims that he was never offered the ninety (90) day period.

Given this question of fact, the motion for summary judgment is denied as to the breach of contract claim.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is **DENIED in part and GRANTED in part**.

SO ORDERED.

_____/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
      August 9, 2005